UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>TAKISHA GANEOUS,<br><br>    *Defendant*. | Criminal Action No. 21-242 (TJK) |

## MEMORANDUM ORDER

Several years ago, Takisha Ganeous pleaded guilty to a superseding information charging her with one count of conspiracy to distribute fentanyl and another of unlawful possession of a firearm. Her plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) included an agreed-upon sentence of eight years' imprisonment. The Court accepted her guilty plea, ordered a presentence report, and ultimately accepted the plea agreement and imposed that sentence. Now Ganeous, having served part of that term, says that her counsel was ineffective and moves under 28 U.S.C. § 2255 to vacate or reduce the sentence. But she has not carried her heavy burden of establishing counsel's deficient performance and resulting prejudice. Nor has she shown that an evidentiary hearing or appointed counsel is warranted. Thus, the Court denies her § 2255 motion and all the relief it requests.

**I.     Background**

In December 2021, Ganeous entered into a plea agreement with the government under Rule 11(c)(1)(C). ECF No. 17. Through it, she agreed to plead guilty to a superseding information charging her with conspiring to distribute and possess with intent to distribute 40 grams or more of fentanyl, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846, and unlawfully possessing a firearm and ammunition as a felon, *see* 18 U.S.C. § 922(g)(1); ECF No. 17 at 1. The parties also agreed to a sentence of eight years of incarceration followed by four years of supervised release. ECF No. 17

at 2.  Further, Ganeous "agree[d] to waive, insofar as such waiver [was] permitted by law, the right to appeal the conviction in this case on any basis." *Id.* at 9.  She did the same for her right to appeal her sentence, subject to limited exceptions.  And although Ganeous waived most of her collateral-attack rights, she retained the right to so challenge her conviction or sentence based on, among other things, ineffective assistance of counsel.  *Id.*

As part of the agreement, the government agreed to not prosecute her further for the conduct described in the statement of offense.[1]  ECF No. 17 at 2.  It also agreed "to dismiss the Indictment . . . in this case at the time of sentencing" and to dismiss a case against Ganeous in the Superior Court of the District of Columbia, in which she was charged with unlawful possession of a firearm (prior felony) and nine other criminal offenses stemming from a May 2019 traffic stop.  *Id.*; *see also United States v. Takisha Ganeous*, 2019-CF2-007074 (D.C. Super. Ct. 2019) (noting ten-count indictment).  More than that, Ganeous would face no other charges for non-violent criminal offenses committed in D.C. before executing the plea agreement so long as the government knew about them.  ECF No. 17 at 2.  When she signed the agreement in December 2021, she "agree[d] to it without reservation" and further acknowledged that she "read every page of th[e] Agreement," "discussed it with [her] attorney," and "fully underst[ood] th[e] Agreement."  *Id.* at 14.

In connection with this plea agreement, Ganeous also signed a statement of offense, which she acknowledged "fairly and accurately describe[d] [her] actions and involvement in the offenses to which" she agreed to plead guilty.  ECF No. 17 at 2.  The statement explains that law-enforcement officers identified Ganeous as part of a drug-trafficking operation in Maryland and D.C. that

---

[1] Both the U.S. Attorney's Office for the District of Columbia and the District of Maryland agreed to not prosecute Ganeous further for the conduct described in the statement of offense.  ECF No. 17 at 2.

2

started in early 2020 and continued until at least March 2021. ECF No. 18 at 4–5. Ganeous admitted that during that time, she knowingly and intentionally agreed with other members of the operation to distribute drugs, including fentanyl. *Id.* She also admitted that during the conspiracy, she sold fentanyl to law-enforcement agents through a series of controlled purchases. *Id.* at 5. Moreover, according to the statement, in March 2021, law enforcement executed search warrants of several Maryland residences and vehicles linked to Ganeous. One residence turned up about $20,000, identification and documents associated with Ganeous, and over 100 grams of a substance containing fentanyl. *Id.* At another residence—this one with Ganeous present—the police recovered a firearm and magazine loaded with 9-millimeter ammunition. *Id.* Ganeous "admit[ted that] she possessed this firearm in the District of Columbia and therefore the firearm traveled in interstate commerce." *Id.* at 6. As part of the statement of offense describing all this conduct, Ganeous signed the following acknowledgment: "I fully understand this proffer and I acknowledge its truthfulness, agree to it and accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully." *Id.* at 8.

Ganeous appeared for a plea hearing a few days after signing these documents in December 2021. *See* ECF No. 38, Plea Agreement Hr'g Tr. (Dec. 13, 2021) ("Plea Hearing Tr."). The Court informed her of the trial rights that she would give up if she pleaded guilty, including her right to appeal her conviction. *Id.* at 6, 11–13. Under oath, Ganeous said that she understood those rights and confirmed that she still wanted to do so. *Id.* at 12–13. The Court also confirmed that Ganeous had read the plea agreement, understood it, and had enough time to talk to her lawyer about it. *Id.* at 17–18. More specifically, Ganeous acknowledged that she understood the statutory penalties that she faced for the two counts to which she was pleading guilty: a maximum sentence of 40 years of imprisonment for the drug-conspiracy charge and another 10 years for the firearm charge.

3

*Id*. at 20–21.  She also acknowledged that she understood that the plea agreement was the kind in which the parties agree on a sentence—here, eight years' incarceration followed by four years' supervised release.  *Id*. at 22.  The Court explained that it could reject, accept, or defer ruling on the plea agreement, but that if it accepted the agreement, it would impose that sentence.  *Id*. at 22–23.  Ganeous said she understood that too, *id*. at 23, as well as the Court's explanation of how the plea agreement would restrict her appeal and collateral-attack rights, *id*. at 30–31.  Also at the plea hearing, Ganeous confirmed that everything in the statement of offense "[was] true and correct." *Id*. at 14.  In particular, she said that she conspired to distribute and possess with intent to distribute 40 grams or more of fentanyl, and that she possessed a firearm and ammunition while knowing that she had been convicted of a felony.  *Id*.  After all this, Ganeous pleaded guilty.  *Id*. at 32.  She confirmed that she was "completely satisfied with the services of [her attorney]" and that she "had enough time to talk with [him] and discuss the case, the charges, the plea offer, and whether or not [she] should accept it."  *Id.* at 31.  The Court accepted her plea but deferred ruling on whether it would accept the plea agreement.  *Id.* at 33.

Three months later, at sentencing, the Court accepted the plea agreement.  *See* ECF No. 35, Sentencing Hr'g Tr. (March 2, 2022) ("Sentencing Hearing Tr.") at 18.  In urging its acceptance, Ganeous's counsel argued that "it did not take long for [Ganeous] to come to the realization that she needed to acknowledge what had transpired . . . and accept responsibility for her conduct."  *Id.* at 13.  He further "recognize[d]" that Ganeous "gained a great benefit to having this case tied to the superior court case."  *Id.* at 15.  Because the Court accepted the plea agreement, it sentenced Ganeous to the agreed-upon sentence: eight years of imprisonment followed by four years of supervised release.  *Id.* at 18, 21.  After moving to dismiss the Indictment, the government said that it would proceed "to dismiss her pending superior court case as that was resolved with this plea."  *Id*. at 25–26.  The Court also informed Ganeous that if she chose to appeal, she had to

4

do so "within 14 days after the Court enter[ed] judgment." *Id*. at 24.

Almost a year later, in February 2023, Ganeous appealed her sentence—but not her conviction—and then, after being provided appellate counsel, quickly voluntarily dismissed her appeal. *See United States v. Ganeous*, No. 23-3018 (D.C. Cir. 2023). Now pending before this Court is her pro se motion to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255. *See* ECF No. 32. In it, Ganeous argues that her counsel in the proceedings before this Court was ineffective for four reasons: he (1) provided faulty legal advice by telling her that she "would face more time if she did not sign plea agreement failure to Appeal [sic]"; (2) mentioned the "Buyer/Seller Relationship" but did not "argue[] this defense" during plea negotiations; (3) did not move to suppress evidence; and (4) did not advise Ganeous of her appeal rights. *See id.* at 4–8. She asks for an evidentiary hearing, appointment of counsel, and ultimately a reduced sentence. *See id.* at 12.

## II.   Legal Standard

Section 2255 permits federal prisoners to collaterally attack an otherwise final sentence if (1) the sentence was "imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack." § 2255(a). The burden is on the petitioner, who "must demonstrate her right to relief by a preponderance of the evidence." *United States v. Ashton*, 961 F. Supp. 2d 7, 11 (D.D.C. 2013). Such relief under § 2255 is an "extraordinary remedy" because society has a "legitimate interest in the finality of judgments." *United States v. Moore*, 75 F. Supp. 3d 568, 571 (D.D.C. 2014). For that reason, it is typically granted only if "the challenged sentence resulted from 'a fundamental defect which inherently results in a complete miscarriage of justice,' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" *United States v. Pollard*, 959 F.2d 1011, 1020 (D.C. Cir. 1992) (citation omitted).

**III.     Analysis**

Ganeous attacks her sentence only on grounds of ineffective assistance of counsel, so she must "show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *In re Sealed Case*, 488 F.3d 1011, 1016 (D.C. Cir. 2007) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Performance qualifies as deficient if counsel's "representation fell below an objective standard of reasonableness." *United States v. Davis*, No. 18-cv-26 (TJK), 2024 WL 4253186, at *2 (D.D.C. Sept. 20, 2024) (quoting *Strickland*, 466 U.S. at 688, 694). When assessing these claims, courts "must be 'highly deferential' to counsel's performance"; what matters is the "reasonableness of counsel's challenged conduct . . . viewed as of the time of counsel's conduct." *Id.* Given that backdrop, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

Two of Ganeous's ineffective-assistance claims relate to her right to appeal. First, she says that her counsel was ineffective for advising her that she "would face more time if she did not sign plea agreement failure to Appeal [sic]." ECF No. 32 at 4. Here Ganeous might be arguing that her lawyer was ineffective because he advised her that if she did not plead guilty, she would face a longer sentence. Or she may be suggesting that her counsel failed to advise her of her right to appeal and the way her plea agreement would limit it. That would run together with her second appeal-focused claim, which says that Ganeous "was not advised of her appeal rights. How to appeal and when to appeal or if counsel would appeal." *Id.* at 8. However construed, on the record here, neither claim comes close to clearing *Strickland*'s high bar.

With her first claim, Ganeous appears to suggest that her counsel unreasonably advised her to plead guilty—and thus waive some appeal rights—because she would be exposed to the possibility of a longer sentence absent her plea. This claim goes nowhere for a simple reason: the record makes clear that any such advice would have been factually correct, so counsel would not have

6

performed deficiently by providing it. The statement of offense and plea agreement both explained that Ganeous's maximum sentence for the two counts of conviction far exceeded the agreed-to sentence of eight years that she negotiated and ultimately received under Rule 11(c)(1)(C). That high end was substantial; the conspiracy charge carried a statutory maximum of *forty* years, and the felon-in-possession charge brought the possibility of another ten. *See* ECF No. 17 at 1; ECF No. 18 at 1. Even the guidelines range the parties agreed to in the plea agreement that could have come into play if the Court rejected the plea agreement would have exposed Ganeous to a sentence of more than eight years.[2] ECF No. 17 at 6. And all of this is to say nothing of the additional time to which Ganeous would have been exposed in connection with the felony case involving a gun in D.C. Superior Court, or in any prosecution undertaken by the U.S. Attorney in the District of Maryland, had she not entered into the plea agreement. Thus, if Ganeous's counsel advised her to "accept the plea agreement with the . . . appeal waiver" because of this potential exposure, she has not shown that such advice would have been anything other than "squarely within the 'wide range of reasonable professional assistance' that *Strickland* protects." *United States v. Chansley*, No. 21-cr-3 (RCL), 2023 WL 4637312, at *14 (D.D.C. July 20, 2023) (citation omitted).

Ganeous also suggests that her lawyer did not advise her about her appeal rights. To the extent she faults him for not explaining how the plea agreement would limit those rights, that claim contradicts the record and finds no support in Ganeous's motion. The plea agreement includes a section titled "Appeal Rights," which explained that Ganeous—with limited exceptions— "agree[d] to waive" the right to appeal her conviction and sentence. ECF No. 17 at 9. Ganeous

---

[2] Ganeous attested that she read and discussed each document with her attorney, ECF No. 17 at 14; ECF No. 18 at 8, and the Court ensured that she understood these key aspects of the agreement, *see* Plea Hearing Tr. at 20–21.

7

signed that document, affirming that she "read every page," "*discussed it with [her] attorney*," and "fully underst[ood] th[e] Agreement." *Id.* at 14 (emphasis added). She also confirmed under oath that she "read and understood" the document and that she "had enough time to talk with [her attorney] about it." Plea Hearing Tr. at 18. And if there were any doubt about the effect of the agreement on her appeal rights, the Court dispelled it. Before entering her guilty plea, Ganeous confirmed in open court that she understood the Court's explanation of a significant consequence of pleading guilty: the loss of certain appeal rights. *See id.* at 12–13. The Court returned to the "appeals provisions in [Ganeous's] plea agreement" later in the plea hearing, specifically telling her that "by pleading guilty, you are giving up all your rights to appeal your conviction" and "sentence" subject to limited exceptions. *Id*. at 30. Ganeous again confirmed she understood. *Id.*

On this record, there is no basis for the Court to conclude that counsel was deficient in failing to explain Ganeous's appeal rights to her. "Entry of a plea is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard." *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999). Because Ganeous "confirmed under oath during the guilty-plea colloquy that" she understood the plea agreement—including the appeal waiver—and had enough time to discuss the document with her attorney, the claim that her lawyer did not adequately explain her appeal rights "necessarily entails an assertion that [s]he lied to the judge at the [plea] hearing." *United States v. Bevly*, 110 F.4th 1043, 1047 (7th Cir. 2024) (citation omitted). So if Ganeous is saying that her attorney failed to explain the plain terms of the plea agreement, that contention may "succeed only if [she] committed perjury at the plea proceedings" and thus "may be rejected out of hand unless [she] has a compelling explanation for the contradiction." *United States v. Jones*, 642 F.3d 1151, 1158 (D.C. Cir. 2011). But Ganeous "offers no reason, let alone a compelling one, to disregard h[er] sworn statements during the guilty-plea colloquy." *Bevly*, 110 F.4th at 1047. Put another way, Ganeous—who bears

8

the burden of establishing deficient performance—offers no factual basis supporting this theory of ineffectiveness or countering these sworn representations. So this claim is no basis for finding her counsel's performance deficient.

If Ganeous means to allege that her lawyer did not discuss an appeal with her *after* sentencing, that claim also falls flat. She never says that she told her counsel to file a notice of appeal, so this is not a situation where a lawyer "disregard[ed] specific instructions from the defendant" to appeal her conviction or sentence. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). To the contrary, Ganeous's limited explanation of her claim focuses on counsel's alleged "fail[ure] to *advise* of appeal," ECF No. 32 at 4 (emphasis added), not his failure to *file* an appeal as directed. *See also id.* at 8 ("Defendant was not advised of her appeal rights."). The question, then, is whether counsel performed deficiently by not "consult[ing] with the defendant about an appeal." *Flores-Ortega*, 528 U.S. at 478.

Even assuming Ganeous's counsel did not consult with her about an appeal after sentencing, this case is one where any such "failure to consult" does not "itself constitute[] deficient performance." *Flores-Ortega*, 528 U.S. at 478. After all, "counsel has a constitutionally imposed duty to consult . . . about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . ., or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. The record reflects no reason for counsel to have thought either. A "highly relevant factor in this inquiry" is whether the defendant, like Ganeous, pleaded guilty. *Id.* Here, the guilty plea cuts against a duty to consult because it "reduce[d] the scope of potentially appealable issues and," in Ganeous's case, "indicate[d] that [she] [sought] an end to judicial proceedings." *Id.* On top of that, by pleading guilty, Ganeous resolved a felony case against her in D.C. Superior Court as well as her criminal exposure in the District of Maryland for her conduct in the statement of offense. ECF No. 17 at 2. Through counsel, moreover, Ganeous

9

requested to "come back as soon as possible" for sentencing, Plea Hearing Tr. at 34, where she later explained that she "just plan[ned] on moving forward," Sentencing Hearing Tr. at 17. And finally, the Court's acceptance of her Rule 11(c)(1)(C) plea agreement was an especially strong signal that counsel need not have further consulted with her about an appeal: Ganeous "received the sentence bargained for as part of the plea" and through her plea agreement "expressly . . . waived some or all appeal rights." *Flores-Ortega*, 528 U.S. at 480. In sum, Ganeous has not alleged that her counsel failed to follow a specific directive to appeal. Nor has she established that he deficiently failed to consult with her; far from suggesting that either she or a rational defendant would have wanted to appeal, the record points strongly in the other direction. Thus, to the extent Ganeous points to any fault by her counsel along these lines, her claim fails.[3]

Moving on from appeal rights, Ganeous also says that her counsel performed deficiently in two other ways. She starts by claiming that her counsel "never argued" the "Buyer/Seller Relationship" defense. ECF No. 32 at 5. But Ganeous offers no allegations—and certainly no factual support—that would suggest the viability of that defense such that failing to press it during plea negotiations was objectively unreasonable. And that "burden . . . rests squarely on [her]" because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 571 U.S. 12, 22–23

---

[3] Ganeous also says that her counsel did not tell her "when to appeal," possibly suggesting that she would have filed a timely—as opposed to her belated—appeal had counsel properly consulted her. ECF No. 32 at 8. But sometimes "a sentencing court's instructions to a defendant about his appeal rights . . . are so clear and informative as to substitute for counsel's duty to consult." *Flores-Ortega*, 528 U.S. at 479–80. That describes the instructions the Court provided here when it told Ganeous that "[i]f you choose to appeal, you must file *any appeal* within 14 days after the Court enters judgment." Sentencing Hearing Tr. at 24 (emphasis added). Given that clear explanation, counsel—if indeed he did not consult with Ganeous about the timeline for an appeal—could have "reasonably decide[d] that he need not repeat that information." *Flores-Ortega*, 528 U.S. at 480.

10

(2013) (citation omitted) (describing as "troubling" the "Sixth Circuit's conclusion that [counsel] was ineffective because" the record did not affirmatively show that "he gave constitutionally adequate advice").  Merely reciting the buyer-seller defense does nothing to show that counsel performed deficiently by not arguing that Ganeous lacked "knowledge of the overall existence of the conspiracy." *United States v. Bostick*, 791 F.3d 127, 139 (D.C. Cir. 2015) (discussing buyer-seller defense) (citation omitted).  To the contrary, the record—including the statement of offense that Ganeous agreed "fairly and accurately describe[d] [her] actions and involvement in the offenses to which [she]" pleaded guilty, ECF No. 17 at 2—strongly suggests that this defense would have been a "losing argument" that counsel could have "decline[d] to pursue" without "perform[ing] deficiently." *United States v. Watson*, 717 F.3d 196, 198 (D.C. Cir. 2013).  Indeed, Ganeous confirmed that she did "in fact[] conspire to distribute and possess with intent to distribute 40 grams or more of fentanyl," Plea Hearing Tr. at 14, and that she "distributed and possessed with intent to distribute narcotics in a *coordinated manner* with others"—coordination that "included common sources of supply and helping each other fill orders." ECF No. 18 at 5 (emphasis added).  Not only does Ganeous fail to offer facts undermining these admissions, but she fails to provide *any* allegations supporting the viability of this defense.  So she has not come close to carrying her heavy burden of establishing deficiency based on her counsel's failure to argue this point.[4]

A similar problem dooms her claim that her counsel performed deficiently by "fail[ing] to file motion to suppress." ECF No. 32 at 7.  He should have done so, Ganeous says, because she lived at an address different from the one where the police arrested her and recovered the firearm.

---

[4] Although Ganeous does not explicitly say that her counsel should have investigated further, that would not save her claim.  She may not establish ineffectiveness by "teasingly suggest[ing] that there may be facts out there that" her counsel "could have discovered and that would have helped h[er] case." *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996).

11

*Id.* But as with the hypothetical buyer-seller defense, Ganeous offers no factual allegations suggesting that she could have successfully suppressed the firearm or other evidence. She insists that she "maintained her own address" that was "[d]ifferent from where she was arrested and where the gun was found." *Id.* But whether she lived elsewhere does not itself suggest that the police unlawfully obtained the weapon (or other evidence) despite, according to the statement of offense, having a "search warrant[]" for the address "where [Ganeous] was present." ECF No. 18 at 5. If anything, Ganeous's factual claim cuts the other way. A defendant, after all, "must have a 'legitimate expectation of privacy' in the place searched" to "challenge the validity of a search or the introduction of evidence seized therefrom." *United States v. Savoy*, 889 F. Supp. 2d 78, 86 (D.D.C. 2012) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)). And a person's "mere legitimate presence at a location does not automatically confer standing to challenge a search of that location." *Id.* So by trying to distance herself from the location searched, Ganeous merely underscores why she provides no reason to think that a suppression motion would have been successful. In sum, Ganeous's conclusory assertion about living elsewhere renders this hypothetical suppression motion the equivalent of a "losing argument" that counsel may "declin[e] to pursue" without "perform[ing] deficiently." *Watson*, 717 F.3d at 198; *see also United States v. Kelly*, 552 F.3d 824, 831 (D.C. Cir. 2009) (counsel "not obliged to raise a meritless defense").

These latter two claims of ineffectiveness—that is, those premised on the forgone buyer-seller defense and motion to suppress—falter for another reason too. Even if Ganeous had shown that such a defense or motion would have had viable, she would have also needed to establish that her counsel failed to "exercise . . . reasonable professional judgment" by declining to argue these points in the plea context. *Burt*, 571 U.S. at 22. "[P]lea negotiations," however, are "by their nature[] give-and-take." *Healy v. United States*, No. 18-cv-13471 (KM), 2022 WL 16922191, at

*8 (D.N.J. Nov. 14, 2022). And Ganeous, through counsel, "was successful in obtaining significant concessions from the Government." *Id.* The U.S. Attorney's Offices for the District of Columbia and Maryland agreed to not prosecute Ganeous further for the conduct described in the statement of offense. *See* ECF No. 17 at 2. The government also promised to request dismissal of the felony case against her in D.C. Superior Court. *See id.* And the parties agreed on a sentence far below the statutory maximum—and even below the top of the guideline range, as calculated by the parties, for the offenses of conviction—which the Court ultimately accepted. So even if a buyer-seller defense or suppression motion had *some* merit—and to be clear, Ganeous has not shown that they did—that alone would not establish deficient performance here. That is because "[o]btaining these concessions" at the expense of "challenges" to fruits of the search and a possible buyer-seller argument, at least on this record, "was a legitimate . . . strategy" that passes muster under *Strickland*. *Healy*, 2022 WL 16922191, at *9 (rejecting argument that counsel performed deficiently by "waiving challenges to any sentence at or below offense level 31" in exchange for various "concessions").

Finally, even if Ganeous had established deficient performance with any of these theories, her claim for relief would still flunk *Strickland*'s requirement that a defendant show prejudice. "[I]n the context of an attack on a guilty plea," showing prejudice means showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *In re Sealed Case*, 488 F.3d at 1016 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Ganeous risked a much longer prison sentence if she went to trial in this case and her Superior Court case. Instead, she negotiated a Rule 11(c)(1)(C) plea agreement with an agreed-upon sentence of eight years, which the Court accepted. Simply gesturing after the fact at a vague desire to exercise appeal rights is not enough to show a probability that she would have gone to trial had counsel more fully explained the plea agreement's effect on those rights. The same holds

13

true for her theories about the buyer-seller defense and suppression motion, especially given the lack of support for them in the record. For all these reasons, Ganeous is not entitled to the "sentence[] reduction" that she seeks. ECF No. 32 at 12.

Ganeous fares no better with her requests for an evidentiary hearing and appointed counsel. As to the first, the Court need not hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." § 2255(b). So too if the petitioner's "claims are 'vague, conclusory, or palpably incredible,'" or if the petitioner "has failed to present any affidavits or other evidentiary support for the naked assertions contained in his motion." *United States v. Monzel*, No. 09-cr-243 (GK), 2017 WL 1745372, at *2 (D.D.C. May 3, 2017) (quoting *Pollard*, 959 F.2d at 1031, and then *United States v. Taylor*, 139 F.3d 924, 933 (D.C. Cir. 1998)). Ganeous's motion fits the bill for all three types of deficiencies. As explained, the motion and record—here, the plea hearing, plea agreement, and statement of offense—show that her ineffective-assistance claims are meritless. Those claims are also vague and conclusory. To take just two examples, she does not clearly specify what evidence should have been suppressed, nor does she point to any facts suggesting that a buyer-seller defense would have been viable. Relatedly, the limited allegations she offers are merely "naked assertions" without "affidavits or other evidentiary support" for her claims of ineffectiveness. *Taylor*, 139 F.3d at 933. Thus, the Court declines to hold an evidentiary hearing.

Ganeous has also failed to show that the appointment of counsel is appropriate. She has no constitutional right to an attorney in § 2255 proceedings. *See United States v. King*, 4 F. Supp. 3d 114, 125 (D.D.C. 2013). Courts may, however, "appoint counsel for a § 2255 petitioner if the interests of justice so require." *United States v. Washington*, 782 F. Supp. 2d 1, 3 (D.D.C. 2011) (citing 18 U.S.C. § 3006A(a)(2)). That determination turns on "1) the petitioner's likelihood of success on the merits, 2) the ability of the petitioner to articulate his claims *pro se* in light of the

14

complexity of the legal issues involved, and 3) the factual complexity of the case and whether the petitioner has the ability to investigate undeveloped facts." *Id.* As discussed, Ganeous's theories of ineffective assistance suffer from several flaws, so the first factor tilts the scales against appointment of counsel. So does the third; Ganeous fails to "allege that any further fact investigation is necessary," and the existing record reveals the problems with her claims. *Id.* Although Ganeous's barebones motion "suggests that aid [in] articulating [her] legal claims might assist [her]," that factor alone does not show that the interests of justice require appointment in this case. *Id.* at 3–4 (denying motion to appoint counsel where first and third factors "weigh[ed] against appointing counsel").

### IV.     Conclusion and Order

For all the above reasons, it is hereby **ORDERED** that Defendant's [32] Motion to Vacate is **DENIED**.

**SO ORDERED.**

/s/ Timothy J. Kelly  
TIMOTHY J. KELLY  
United States District Judge

Date: November 6, 2024